Pearson, C. J.
1st. The perishable property and the negro which was sold by the administratrix, with the will annexed, durante minoritate:
The bill seeks to charge Pratt and Clements, who were the sureties of the administratrix, on the ground, that the bond which they’executed, was, by mistake of the clerk, drawn in a way so as to be inoperative, but in equity, they are held liable to the same extent as they would have been liable at law, on the bond, had it been properly filled up, and the adminis-tratrix, de bonis non eum testamento, of the testator, charges the sureties of the administratrix, with a devastavit, and asks for an account of her administration.
Admit under the authority of Armstead v. Bozeman, 1 Ired. Eq. 117, the liability of Pratt and Clements to the same ex *332 tent as if the bond had been properly filled np, the administrator de bonis non, of the testator, meets with this difficulty: In 183 6, Nobert Dickson, one of the executors, attained his age of twenty-one, and qualified. This cause of action in equity, to hold the sureties of the administratrix, to an account for any devastavits during his minority, then accrued to him.— lie lived until 1853, seventeen years, during all of which time it was his duty, and interest to assert this equity.- ' Pratt and Clements were aware of their liabilities, as is proven by the fact of the deed of trust, which they took for their indemnity and yet they permit the slaves included in the trust, to be otherwise disposed of. These facts taken in connection with the article of agreement, executed between Merritt and his wife, and Nobert Dickson, the executor and trustee, of Joseph Dickson, seem sufficient to prove, as an open matter of fact, that the cause of action or equity of the executor, against the administratrix, cum. tes. du/rante minoritate, was satisfied. But suppose the proof should fall short, as an open question of fact,a presumption is raised by the statute law, after the lapse of ten years, that this equity, or cause of action in 'equity, has been satisfied, released or abandoned.
The reply made on the part of the plaintiffs, is not tenable, either as a matter of law, or by the proofs on the question of fact. The testator appointed Nobert Dickson one of his executors ; on arriving at age, he was entitled, and did qualify, as executor of his grandfather’s will. There was no ground on which' the county court could have refused to -permit him to qualify. He was a drunken, trifling young man, but there is no proof tending to show that he was an idiot; in fact there is no allegation to that effect, in the bill; and his being a weak-minded, imbicile young man, addicted to drink, did not authorise the county court to refuse to permit him to qualify, or at all events, does not authorise this Court to treat his appointment as a nullity, and on that ground, to'grant relief, as' if the estate of Joseph Dickson, had been without a representative, or person capable of suing in its behalf,, from 1836 up to the death of Nobert Dickson, in 1853.
*333 2nd. The two negoes sold by the executor, Eobert Dickson to the defendant, Pratt:
The equity is put upon the ground of following’ the trust fund in the hands of a -purchaser with notice. Admit the equity, and waive any reference to the difference between a sale by an executor, and a sale by a trustee, it has so happened that in point of fact, this part of the trust fund, has become extinct by the act of God, both of the negroes having died in the life time of Eobert Dickson. So the contingent limitation over, did not vest at his death, bec'ause the subject-matter of the bequest was not, at that time, m esse. So this equity must fail; there being no allegation or proof that the deáth of these slaves, was caused, or in any way-hastened by the fact of their having been sold, and put into the possession of Pratt, by the executor. On the contrary, the proof is, that Pratt treated them as his own property, and took very good care of them. The claim of-the plaintiffs to i\ie profits and hwes of the two negroes sold to Pratt, accrued while the negroes lived, cannot be supported. The negroes belonged to Eobert Dickson, absolutely, subject to a limitation over,-after his death, to the plaintiffs; so Pratt had a good title during the life of Eobert Dickson, and consequently, was entitled to the profits and hires accruing before his title was defeated by the happening of the contingency on which the negroes were limited over ; which limitation over as we have seen, was prevented by the deaths of the negroes, before the 'happening of the contingency, and so the limitation over failed to take effect by the extinction of the subject of the bequest.
3. The negroes sold under an execution against Merritt and purchased by Hays and George :
This sale was made in 1836, since which time, Hays and George have been in the adverse possession of the negroes purchased by them respectively. Under the statute of limitations, this adverse possession gave them the title, not only against Eobert Dickson, but, also, against the persons entitled to the limitation over, for whom he held the title as trustee. The principle, that when the statute of limitations is a bar to *334 the trustee, it is also a bar to the cestui qid trust for whom he holds the title, and whose right it is his duty to protect, is settled; Wellborn v. Finley, 7 Jones, 228. In delivering the opinion in that case, the principle was considered so plain that it was deemed unnecessary to cite authorities, and the Court was content to leave the question on the manifest reason of the thi/ng. Eor statutes of limitation and statutes giving title by adverse possession, would be of little or no effect, if their operation did not extend to oestuis qui trust as well as trustees who hold the title for them, and whose duty it is to protect tb,eir rights. If by reason of neglect on the part of the trustees, oestuis qm trust lose the trust fund, their remedy is against the trustees, and if they are irresponsible, it is the misfortune of the oestuis qui trust, growing out of the want of forethought on the part of the maker of the trust, under whom they claim. The question, however, having been discussed at the bar, we will now refer to Lewin on Trusts, 24 Law Lib. 306, and the cases there cited, which will warrant the conclusion that the doctrine is settled.
On the whole, we have arrived at the conclusion, that the persons entitled under the limitation over, have no remedy, except against the executor and 'trustee, Robert Dickson, who is dead — insolvent, and against whose representative no relief is prayed, and they must ascribe their disappointment, in losing the benefit which they expected to have realised, under the limitation, to the fact, that the two respectable and competent gentlemen, who were named by the testator as executors and trustees, in connection with his grandson, Robert Dikson, refused to qualify- as executors or act as trustees, in .consequence of which, Robert Dickson, on arriving at age, became the only executor and trustee and proved to be-incompetent and faithless.
The allegation of fraud and collusion on the part of Hays and George, with the executor and trustee, Robert Dickson, which is made in order to prevent the application of that statute, in respect to the plaintiffs’ claiming as oestuis qui trust ¡under the limitation over, is nqt supported by the proofs.
Pee Oubiah, Bill dismissed with costs.